**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

ANNE SYKES, individually, and on
behalf of M.S. (Minor), G.S. (Minor), and
M.M. (Minor), and SHAWN SYKES
vs. C.A. NO.: 1:07-cv-00369-ML-LDA

FIDELITY NATIONAL PROPERTY
AND CASUALTY INSURANCE
COMPANY

# MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Now come the Plaintiffs, Anne Sykes, individually and on behalf of M.S. (Minor), G.S. (Minor), and M.M. (Minor), and Shawn Sykes (collectively, "Plaintiffs"), and offer the following Memorandum in Support of their Motion to Remand.

## I. INTRODUCTION

### A. Procedural History

Plaintiffs filed their original Complaint in Kent County Superior Court on August 21, 2007, KC07-0878, and an Amended Complaint on August 27, 2007.[1] Defendant was served on September 24, 2007 and filed a timely Notice of Removal pursuant to 28 U.S.C.A. §§ 1441(a) and 1446 on October 4, 2007. Defendant filed its Answer on October 11, 2007, followed by a State Court Record on October 12, 2007 and its Corporate Disclosure Statement on October 19, 2007. On December 4, 2007, the parties attended a pretrial conference with the Honorable Chief Judge Mary M. Lisi. Judge Lisi entered a Scheduling Order the following day. A Settlement Conference is presently scheduled with the Honorable Magistrate Judge Lincoln D. Almond on

[1] At the time Plaintiffs filed their Amended Complaint, no responsive pleading had been served by the Defendant as Plaintiffs had not yet perfected service. Thus, Plaintiffs were allowed to amend their original pleading as a matter of course pursuant to Rule 15(a) of the Rhode Island Superior Court Rules of Civil Procedure.

February 13, 2008 at 2:00 p.m.[2] Lastly, Plaintiffs are filing – contemporaneously with the present Motion -- a Motion to Amend their Complaint, along with a supporting Memorandum and purported Second Amended Complaint.

**B. <u>Factual Background</u>**

Anne and Shawn Sykes live in a split level home in West Warwick, RI ("the Premises") with four of their children: M.S. (Minor); G.S. (Minor); M.M. (Minor); and Alexandria (nineteen). Until May 2007 the Sykes's other son, Jonathan (20), also lived with the family. The Premises has 1960 square feet -- 980 square feet on the first floor and 980 square feet on the second floor – and is built on a slab. The first floor contains three (3) bedrooms, a family room/play room, a bathroom and a laundry room. The second floor contains an additional three (3) bedrooms, a kitchen, a living room, and one bathroom. In April 2005, Jonathan, Alexandria and M.M. occupied the three first floor bedrooms, while Anne and Shawn, M.S. and G.S. used the three second floor bedrooms.

On April 2, 2005, the Premises suffered extensive flood damage to the first floor, leaving the entire area uninhabitable. The Premises experienced less severe damage to the same area in February 2004, for which Defendant – the Sykes's flood insurer – paid nearly $4,000.00.[3] Thus, Anne Sykes promptly submitted a claim with Defendant, who in turn sent a claims adjuster to the Premises. In or around May 2005 the adjuster completed an estimate quoting approximately $15,000.00 in projected repair costs. The family also suffered several thousand dollars in personal property damage, for which Anne and Shawn Sykes had purchased "contents

[2] Pursuant to the Settlement Conference Order entered by Judge Almond on December 17, 2007, Plaintiffs' counsel will be submitting a formal settlement demand to Defendant's counsel well in advance of the scheduled February 13, 2008 conference.

[3] The Premises also sustained a loss to the first floor in 2001, for which their previous insurer – First Community Insurance Company – paid several thousand dollars in damages. Sometime in or around 2003, Defendant purchased a book of business from First Community which included the Sykes's flood insurance policy.

coverage" in or around December 2004. The adjuster soon forwarded the estimate to Defendant, along with a sworn proof of loss signed by Anne Sykes.

Meanwhile, the Sykes family home was thrown into chaos. With the first floor uninhabitable, the family had to move all of their personal effects – as well as Jonathan, Alexandria and M.M. – to the second floor. Thus, while the family waited for Defendant to issue a check for the first floor repairs and personal property damage, all seven family members – along with a dog and two cats – were occupying the 980 square foot second floor.

Throughout the spring and summer of 2005, Anne Sykes made repeated written and telephonic inquires to Defendant asking about the status of the claim. The Sykes's also worked closely with their local agent – Smith Mack and Associates – in providing Defendant all the information it requested. Despite the Sykes's diligence, Defendant refused without explanation to issue a final coverage determination. In the mean time, Anne and Shawn cleaned the first floor as best they could.

Unfortunately, the Sykes's could not prevent the first floor from developing severe mold, which was transported upstairs every time Anne and Shawn cleaned or had to use the laundry room. The mold contributed to Shawn and G.S. having repeated sinus infections. Even worse, the mold exacerbated a pre-existing severe asthmatic condition suffered by M.S.

In October 2005 – at which point Defendant had still not issued a final coverage determination -- the first floor suffered another flood loss. Anne Sykes called Defendant and requested that an adjuster be sent to the Premises. Defendant refused, insisting instead that the claim be handled over the phone. The Sykes's had finally had enough.

Therefore, on December 20, 2005, Anne Sykes filed a formal complaint with the Rhode Island Department of Business Regulation, Division of Insurance ("the Division"). The

Division contacted Defendant, who responded in writing in February 2006 that both claims – including the ten-month old April 2005 claim – were still under review.[4] Defendant informed the Division that its possible objection to coverage regarded the structural classification of the first floor. Specifically, Defendant was trying to determine whether the first floor of the Premises was a "basement."[5] As mentioned previously, the Premises is built on a slab and the entire first floor is above ground. Indeed, Defendant never explained to the Division the basis for its belief that the first floor – for which Defendant provided coverage in 2004 and sold the Sykes's "contents coverage" later that year -- might be a "basement."[6]

Finally, in a March 2006 letter to the Division, Defendant stated – without explanation -- that the first floor of the Premises was a "basement", and thus Defendant was denying all coverage and closing its file. The Division then forwarded the letter to Anne Sykes, whose family was still confined to the 980 square foot second floor. Defendant never communicated with Plaintiffs directly regarding its determination or the final denial of coverage.

Since Anne and Shawn Sykes did not have enough money for the necessary repairs, they were forced to continue living in chaos.[7] Once finally able to obtain a home equity loan, Anne and Shawn began interviewing contractors. Repairs to the first floor began in late 2006.

---

[4] According to the agreement between Defendant and the Federal Emergency Management Agency ("FEMA"), codified at 44 C.F.R. Pt. 62, App. A ("the Arrangement"), FEMA requires Defendant to comply with "applicable time standards" for policy procurement and claims administration. Pursuant to Article II(B)(6) of the Arrangement, Defendant must adhere to a "45 days average from receipt of Notice of Loss (or equivalent) through completion of examination." Thus, as of February 2006, Defendant was over 250 days late in issuing a coverage determination.

[5] The Standard Flood Insurance Policy ("SFIP" or "the Policy") issued by Defendant excludes much coverage for damage to the finished structures and contents of "basements." The Policy defines a "basement" as: "Any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides."

[6] Plaintiff Anne Sykes even sent Defendant photographs of the Premises, including her standing in the driveway leading to the ground-level first floor.

[7] At all times relevant hereto, Shawn Sykes was the sole wage earner and made slightly over $12.00 per hour working for Brooks Pharmacy, and an extra $100.00-$200.00 per week maximum tending bar at a local Veterans of Foreign Wars. The Sykes's inquired into refinancing or obtaining a home equity line, but were told that with their limited income, their debt-to-income ratio was too high. Hence, they were advised to try to pay down some debt in order to qualify for an equity line at an acceptable rate. They did just that and were finally qualified in or around July 2006.

By January 2007, the first floor was again inhabitable and life in the Sykes home began returning to normal.[8]

### C. Issues Presented

All of Plaintiffs' claims rest on one factual question: Is the first floor of the Premises below ground level? If the answer is "yes," then all of Plaintiffs' counts related to claims administration should be dismissed, and the case allowed to proceed solely on the policy procurement claims (i.e., Defendant sold Plaintiffs "contents coverage" for an area that the Policy excluded from coverage). If the answer is "no" – and thus Plaintiffs were entitled to coverage – the remaining issues concern Defendant's actions and *mens rea* during the procurement and claims handling processes. None of these issues presents anything even remotely resembling a federal question, which is the only procedural basis for removal relied on by Defendant.[9] Thus, the entire action should be remanded to the Kent County Superior Court pursuant to 28 U.S.C.A. § 1447(c).

## II. STANDARD FOR REMOVAL AND REMAND

This Court's removal jurisdiction is governed by 28 U.S.C.A. §§ 1441 and 1446 et seq. Section 1441(a) states, in relevant part:

---

[8] The total cost of repairs – exclusive of the personal property destroyed – is roughly $15,000.00. The Sykes's still need to replace the first-floor carpet.

[9] Defendant has not cited 28 U.S.C.A. § 1332 as a basis for removal, likely because this Court does not have diversity jurisdiction over the case. Specifically, 28 U.S.C.A. § 1332(c)(1) states, in relevant part, that for purposes of that section and 28 U.S.C.A. § 1441:

> A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen*, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business…

(Emphasis added). In other words, since Plaintiffs' suit is a direct action against its insurer, Defendant is deemed a citizen of Rhode Island for purposes of § 1441. Hence, jurisdiction under § 1332 is precluded.

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending

Further, § 1441(b) provides, in relevant part:

> [A]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

By its terms, § 1441 (b) is apropos only when a defendant's petition for removal is not premised on this Court's diversity jurisdiction under § 1332. The first portion of § 1441(b) mirrors that found in 28 U.S.C.A. § 1331, which grants federal courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal courts interpret the "arising under" language of §§ 1331 and 1441(b) in identical fashion. Broadcasting Networks of Puerto Rico, Inc. v. Communications Counsel Group, Inc., 2005 WL 1981297, *2 (D.P.R. 2005). Thus, even absent complete diversity, one way in which a defendant may successfully utilize § 1441 is by establishing that had the plaintiff initially filed the action in federal court, the court would have had jurisdiction pursuant to § 1331. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 19 and n. 18 (1983).

Generally, whether a complaint could have been brought originally in federal court under § 1331 is determined by applying the "well-pleaded complaint" rule. Caterpillar Inc., 482 U.S. at 392; Metropolitan Life Insurance Company v. Taylor General Motors Corporation v. Taylor, 481 U.S. 58, 63 (1987) ("The well-pleaded complaint rule is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts"). This rule states that a case "arises under" federal law only if a federal claim appears within the "four corners" of

the complaint. Id.; Viqueira v. First Bank, 140 F.3d 12, 18 (1st Cir. 1998) ("It is black-letter law that [federal question] jurisdiction must be apparent from the face of the plaintiff's pleading"). The Court must make this jurisdictional determination without reference to the defendant's answer or petition for removal, and disregarding any anticipated defenses cited in the plaintiff's complaint. Caterpillar Inc., 482 U.S. at 393; Franchise Tax Board, 463 U.S. 1 at 13-14; Gully v. First National Bank in Meridian, 299 U.S. 109, 113 (1936); The Fair v. Kohler Die Specialty Company, 228 U.S. 22, 25 (1913). If a federal claim is not manifest in the four corners of the complaint, the Court must then decide whether any of the three recognized corollaries to the "well-pleaded complaint" rule applies.

The first corollary is complete preemption. Complete preemption of an area of law occurs when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Insurance Company, 481 U.S. at 63-64. The second corollary is the "artful pleading" doctrine, which states that a plaintiff may not defeat removal by failing to plead essential federal questions in a complaint.[10] The third corollary is the "substantial federal question" doctrine discussed, *inter alia*, in Franchise Tax Board, 463 U.S. at 11-13 and 27-28. The doctrine states "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Board, 463 U.S. at 27-28.

When deciding whether one of the above corollaries may apply, the Court must also consider whether its exercise of jurisdiction is consistent with principles of federalism. See, e.g.,

[10] Franchise Tax Board, 463 U.S. 1, 22 [citing AVCO Corp. v. Aero Lodge No. 735, Int'l Assn. of Machinists, 390 U.S. 557 (1968)]. The continued independent viability of the artful pleading doctrine is questionable. Specifically, the United States Supreme Court apparently subsumed the doctrine under the penumbra of complete preemption in Rivet v. Regions Bank Louisiana, 522 U.S. 470, 472 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claims"); accord Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 12 (1st Cir. 2004) ("We are skeptical of the applicability of the artful pleading doctrine outside of complete federal preemption of a state cause of action").

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 313 (2005); see also Merrell Dow Pharmaceuticals Inc v. Thompson, 478 U.S. 804, 810 (1986); Franchise Tax Board, 463 U.S. at 8. Therefore, removal statutes must be construed narrowly. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). The defendant bears the burden of establishing the federal court's jurisdiction. Rossello-Gonzalez, 398 F.3d at 11 [citing BIW Deceived v. Local S6, Indus. Union Marine and Shipbuilding Workers of America, IAMAW Dist. Lodge 4, 132 F.3d 824, 831 (1st Cir. 1997)]. Further, any doubts concerning federal question jurisdiction should be resolved in favor of remand. Id. (citing Shamrock, 313 U.S. at 108-09); Champagne v. Revco D.S., Inc., 997 F.Supp.220, 221 (D.R.I. 1998).

## III. LEGAL ARGUMENTS SUPPORTING REMAND

### A. Plaintiffs' Complaint Does Not Expressly or Implicitly Rely On Federal Law. Thus, the Court Presumably Lacks Subject Matter Jurisdiction Under § 1331

The "well-pleaded complaint" rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc., 482 U.S. at 392; (citing The Fair, 228 U.S. at 25); Healy v. Sea Gull Specialty Co., 237 U.S. 479, 480 (1915) ("[T]he plaintiff is absolute master of what jurisdiction he will appeal to"). Put another way, a defendant cannot invoke federal question jurisdiction by re-characterizing a plaintiff's complaint in terms of purported federal questions. Merrell Dow Pharmaceuticals, Inc., 478 U.S. at 809, n. 6. As the United States Supreme Court stated:

> [A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

Caterpillar Inc., 482 U.S. at 399 (internal citations omitted). Thus, a plaintiff may determine – through the allegations in his or her complaint – whether or not a case is removable under

§ 1441. Great North R. Co. v. Alexander, 246 U.S. 276, 282 (1918).

In the present case, nowhere in their Complaint do Plaintiffs refer to, much less rely on, federal law. First, Plaintiffs do not advance a single federally created cause of action.[11] Second, Plaintiffs' claims do not require the interpretation or application of any federal law.[12] Third, even if federal law could provide the basis for Plaintiffs' claim, the United States Supreme Court has made clear that Plaintiffs have the absolute right to bypass federal avenues of relief in favor of purely state law claims. See Caterpillar Inc., 482 U.S. at 392; The Fair, 228 U.S. at 25; Healy, 237 U.S. at 480. Hence, under the "well-pleaded complaint" rule, this Court has no federal question jurisdiction.

### B. None of the Three Recognized Exceptions to the Well Pleaded Complaint Rule Apply to Plaintiffs' Complaint. Thus, This Court Lacks Subject Matter Jurisdiction Under § 1331

#### 1. Plaintiffs' Complaint Has Not Been Artfully Pled

Plaintiffs have not omitted any necessary federal questions from their Complaint. Defendant is attempting to re-characterize Plaintiffs' Complaint by raising purported federal defenses and insisting that federal law, rather than state law, is applicable to Plaintiffs' claims. However, the presence of possible federal defenses cannot defeat Plaintiffs' choice of forum. Caterpillar Inc., 482 U.S. at 399; Merrell Dow Pharmaceuticals, Inc., 478 U.S. at 809, n. 6. Also, even if Defendant is correct that federal law governs the resolution of Plaintiffs' claims, this choice of law issue has no jurisdictional relevance. See Franchise Tax Board, 463

---

[11] On Page 6 of its Notice of Removal, Defendant asserts that 42 U.S.C.A. § 4072 provides the basis for Plaintiffs' cause of action. However, the plain language of § 4072 creates a private right of action against the Director of FEMA only, and does not mention – either explicitly or implicitly – "Write Your Own Program Carriers" ("WYOs") like Defendant. Plaintiffs will further discuss the inapplicability of § 4072 in subsection "C" below. For now, suffice it to say that if Plaintiffs wanted to sue FEMA, they would have sued FEMA. As masters of their Complaint, Plaintiffs have chosen instead to sue Defendant.

[12] While the Policy was issued pursuant to -- and is subject to the requirements of -- the National Flood Insurance Act (42 U.S.C. §§ 4001-4129, et seq.) ("NFIA"), Plaintiffs are not challenging the applicability of any provisions of the Act, nor are they requesting an interpretation of any portion of the Policy.

U.S. at 14, 27-8; Merrell Dow Pharmaceuticals, Inc., 478 U.S. at 817; Empire Healthchoice v. McVeigh, 126 S. Ct. 2121, 2137 (2006). Indeed, state courts are equally competent to apply federal law. Id. Hence, Plaintiffs' Complaint has not been "artfully pled" and federal question jurisdiction is not warranted.[13]

**2. None of Plaintiffs' Claims Are Completely Preempted**

The question of complete preemption requires a determination of congressional intent. Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 45 (1987) (internal citations omitted). Moreover, Courts should begin with the assumption that Congress did not intend to supplant state law. Medtronic Inc. v. Lohr, 518 U.S. 470, 484-85 (1996). A defendant's burden in overcoming this presumption is "considerable." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins., 514 U.S. 645, 654 (1995). Indeed, the United States Supreme Court has found complete preemption to exist in only a limited number of circumstances. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 485 n.6 (1999) (noting Court has found complete preemption only under the Labor-Management Relations Act and the Employee Retirement Income Security Act of 1974). In the context of removal jurisdiction, federal courts are advised to remand cases to state court absent "clear congressional intent" to create federal jurisdiction. Metropolitan Life Insurance Company, 481 U.S. at 68 (Brennan, J. and Marshall, J. concurring).

The statutory and regulatory scheme established by Congress and FEMA pursuant to the NFIA is insufficiently pervasive to find complete preemption. For example, in 1981 Congress enacted 42 U.S.C. § 4081(c), which provides, in relevant part:

[13] As discussed in Footnote 10, *infra*, the First Circuit has openly questioned the continued independent viability of the artful pleading doctrine, preferring instead to collapse the inquiry into one of complete preemption. Therefore, Plaintiffs will address their remaining arguments against artful pleading as part of their complete preemption analysis.

> The Director of [FEMA] shall hold any agent or broker selling or undertaking to sell flood insurance under this title harmless from any judgment for damages…arising out of an error or omission on the part of [FEMA]…*The Director of [FEMA] may not hold harmless or indemnify an agent or broker for his or her error or omission.*

(Emphasis supplied). Thus, Congress clearly contemplated that WYOs could be sued in tort and expressed no desire anywhere in the NFIA to restrict, much less prohibit, such suits. See Stanton v. State Farm Fire and Cas. Co., Inc., 78 F.Supp.2d 1029, 1037 (D.S.D. 1999) ("Clearly, state tort claims [resulting from WYO administration of SFIPs] were contemplated and not expressly prohibited"); Davis v. Travelers Property and Casualty Co., 96 F.Supp.2d 995, 1002 (N.D. Cal. 2000) ("The NFIA itself…suggests that Congress did not intend to preempt extra-contractual state law claims"). Congress's silence on the issue should be dispositive that state law suits against WYOs are not preempted. See Empire Healthchoice, 126 S. Ct. at 2135 (2006) (if Congress intends to completely displace state law, "it may be expected to make that atypical intention clear").[14]

Moreover, FEMA's own regulations promulgated pursuant to the NFIA – 44 C.F.R. §§ 59.1-77.2 – further belie any contention that Congress sought to supplant state law. Consider Article III, Section D(3) of the Arrangement, which discusses FEMA's obligation to reimburse WYOs for litigation costs:

> If the FEMA OGC [Office of General Counsel] finds that the litigation is grounded in actions by the Company that are *significantly outside the scope of this Arrangement, and/or involves issues of agent negligence*, then the FEMA OGC shall make recommendations to the Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement. In the event the Administrator agrees with the determination of the FEMA OGC…the

---

[14] Indeed, when Congress wishes to preempt an entire area of law, it leaves no room for doubt. For example, when enacting the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., Congress included an *express* preemption clause: "Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…" 29 U.S.C. § 1144(a). For an in-depth discussion about the pervasive regulatory scheme Congress created through ERISA, see Pilot Life Insurance Company, 481 U.S. 41 (1987).

> Company will be notified in writing within thirty (30) days of the Administrator's decision that *any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursement loss cost, expense or expense reimbursement.*

(Emphasis added). Thus, consistent with 42 U.S.C. § 4081 (c), FEMA has expressly reserved the right to deny WYOs reimbursement for damage awards and defense costs if the litigation arises, for instance, from a WYO's negligent acts. A nearly identical exclusion is set forth in Article IX, entitled "Errors and Omissions." Presumably, then, a WYO's intentional torts – such as fraud and bad faith – would be similarly excluded from reimbursement as actions "outside the scope" of the Arrangement. See Spence v. Omaha Indem. Ins. Co., 996 F.2d 793, 797 (5th Cir. 1993) ("FEMA regulations disclaiming any agency relationship with WYO companies, as well as the terms of the FEMA-WYO agreement, more indicate intent to leave those insurers responsible for their own tortuous conduct."); Powers v. Autin-Gettys-Cohen Ins. Agency, 2000 WL 1593401, *3 (E.D.La. 2000) ("Although WYO insurers may draw on FEMA letters of credit to pay SFIP claims, the WYO-FEMA agreement and the appropriate regulations do not permit reimbursement for a judgment based on a state law tort claim."); Moore v. Allstate Ins. Co., 995 P.2d 231, 237 (Alaska 2000) ("[C]onsidering that the regulations do not cover the negligence of insurers or their agents, it seems highly unlikely that willful acts such as fraud or intentional misrepresentation would be covered).[15] Far from evidencing complete preemption, then, the

[15] Several provisions of 44 C.F.R. Pt. 62 also suggest that Congress had no intention of supplanting state law as applied to WYOs. See, e.g., 44 C.F.R. § 62.23(e) ("A WYO Company shall utilize its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its business affairs, subject to the [NFIA and regulations promulgated pursuant thereto].") ; 44 C.F.R. § 62.23 (i) (allowing WYOs significant autonomy in policy marketing and claims adjustment); 44 C.F.R. § 62.23(g) ("A WYO Company shall act as a fiscal agent of the Federal Government, but not as its general agent. WYO Companies are solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Administrator…"); and 44 C.F.R. Pt. 62, App. B (allowing for state auditing and regulatory control).

statutory and regulatory scheme of the NFIA demonstrates a congressional desire to allow plaintiffs to sue WYOs in tort.[16]

### 3. None of Plaintiffs' Claims Contain a Substantial Issue of Federal Law

The final corollary to the well-pleaded complaint rule has its roots in Smith v. Kansas City Title & Trust Co. et al., 255 U.S. 180 (1920) and Moore v. Chesapeake Ry. Co., 291 U.S. 205 (1940). In Smith, Justice Day quoted Chief Justice John Marshall when discussing the meaning of the "arising under" language of Article III, Section 2 of the United States Constitution:[17]

> A case…may truly be said to arise under the Constitution or law of the United States, whenever its correct decision depends upon the construction of either…

Smith, 255 U.S. at 199 [quoting Osborn v. Bank of the United States, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824) (internal citation omitted)]. The Supreme Court found "arising under" jurisdiction in Smith because the case turned on the constitutionality of an act of Congress. Smith, 255 U.S. at 201. In Moore, however, the Court found jurisdiction lacking where the plaintiff sued under a state statute which defined liability, in part, as breach of a duty imposed by a federal statute. Moore held that a suit requiring a state court to interpret federal law to determine whether a *state* statute was violated should not be deemed one "arising under the laws of the United States and

---

[16] On Page 5 of its Notice of Removal, Defendant cites Jamal v. Travelers Lloyds of Texas Ins. Co., 97 F.Supp.2d 800, 804-05 (S.D. Tex. 2000) as an example of a court finding the presence of federal questions in suits against WYOs, thus justifying jurisdiction under § 1331. While Jamal is apropos to the "substantial federal issue" corollary discussed below, the alleged presence of federal questions is not the same as complete preemption. Indeed, even if this Court found one or more of Plaintiffs' state law claims "preempted" by federal law, that determination does not establish removal jurisdiction under § 1441 unless the preemption is *complete*. See Caterpillar Inc., 482 U.S. at 398 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court"); Seruntine v. State Farm Fire & Cas. Co., 444 F.Supp.2d 698, 702 (E.D. La. 2006) ("Only complete preemption creates federal removal jurisdiction…Ordinary preemption is simply a defense to plaintiff's suit") (citing, in part, Metropolitan Life Insurance Company, 481 U.S. at 63).

[17] Note that the Supreme Court has held that federal question jurisdiction under § 1331 is narrower than Article III's "arising under" jurisdiction. Franchise Tax Board, 463 U.S. 1, n. 8 [citing Verlinden B.V. v. Central Bank of Nigeria, 103 S.Ct. 1962, 1972 (1983)].

cognizable in the federal court in the absence of diversity of citizenship." Moore, 291 U.S. at 214-15. The Supreme Court again addressed the scope of federal question jurisdiction under §§ 1331 and 1441 in Franchise Tax Board, holding that removal jurisdiction was lacking even though the plaintiff's complaint required "a construction of ERISA and/or an adjudication of its preemptive effect and constitutionality – all questions of federal law." Franchise Tax Board, 463 U.S. at 14, 27-8.

Three years later in Merrell Dow, the Court held that where Congress expressed no intent to create a private, federal cause of action, a state cause of action premised on violation of a federal statute did not "arise under" the laws of the United States for purposes of § 1331. Merrell Dow, 478 U.S. at 817. In its decision, the Court addressed a "widely perceived irreconcilable conflict" between Smith and Moore. Id. at n.12 (internal citation omitted). The Court stated that the difference in results "can be seen as manifestations of the differences in the nature of the federal issues at stake." Id. Unfortunately, the Merrell Dow Court arguably muddied the jurisdictional waters by hinting that a federal cause of action might be a condition precedent to finding federal question jurisdiction under § 1331. The Court rejected this interpretation and further clarified Merrell Dow in Grable & Sons Metal Products, Inc.:

> It has in fact become a constant refrain in [federal question] cases that federal jurisdiction demands not only a contested federal issue, but a *substantial* one, indicating a *serious federal interest* in claiming the advantages thought to be inherent in a federal forum…we [have not] treated "federal issue" as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a *stated federal issue*, *actually disputed and substantial*, which a federal forum may entertain without disturbing the congressionally approved balance of federal and state judicial responsibilities.

Grable & Sons Metal Products, Inc., 545 U.S. at 313-14 (Emphasis added). In Grable, the Court found federal question jurisdiction where the dispute centered on whether the actions of a federal

agency (the Internal Revenue Service) violated a federal statute. Id. at 315-16. Most recently, the Court stressed that Grable represents a "slim category" of cases warranting federal question jurisdiction under Smith's substantial federal issue doctrine. See Empire Healthchoice, 126 S. Ct. at 2137 and n. 5 (citing Smith as "the classic example of federal question jurisdiction predicated on the centrality of a federal issue").

In the present case, there is nothing remotely resembling a substantial federal issue. First, regarding Plaintiffs' policy procurement claims, every circuit addressing the issue has held that such claims do not create federal jurisdiction under the NFIA. See, e.g., Seruntine, 444 F.Supp.2d at 701; Houck v. State Farm Fire & Cas. Co., 194 F.Supp.2d 452, 461-466 (D.S.C. 2002). Hence, none of Plaintiffs' first four (4) counts establishes federal question jurisdiction. Second, regarding Plaintiffs' claims administration counts, the only thing "federal" about them is the underlying existence of the SFIP, which is issued pursuant to the NFIA. However, even if Plaintiffs' state law claims depended on this Court interpreting the language of the SFIP – which they do not – the Supreme Court has made clear that a need to interpret federal law is insufficient to establish federal question jurisdiction. See Moore, 291 U.S. at 214-15; Franchise Tax Board, 463 U.S. at 14, 27-8; Merrell Dow, 478 U.S. at 817; Empire Healthchoice, 126 S. Ct. at 2137.

In Paragraph 18 of its Notice of Removal, Defendant posits that every suit against a WYO necessarily implicates federal funds. This is simply untrue. As discussed above, FEMA reserves the right to refuse a WYO reimbursement for damage awards and litigation costs arising from a WYO's torts. 44 C.F.R. Pt. 62, App. A, Article III, Section (D)(3). Indeed, Congress has expressly prohibited FEMA from providing reimbursements in those cases. 42 U.S.C. § 4081 (c). Thus, whether or not Defendant will be reimbursed from the federal treasury depends on how the FEMA Office of General Counsel classifies Defendant's conduct and the damages

arising thereby. 44 C.F.R. Pt. 62, App. A, Article III, Section (D)(3). Of course if Plaintiffs are successful in proving their tort claims, FEMA would have no authority to reimburse Defendant. 42 U.S.C. § 4081 (c). Indeed, only damages awarded solely on Plaintiffs' breach of contract claim would arguably be eligible for reimbursement.[18] Even then, Defendant is subject to all terms and conditions of the Arrangement, meaning reimbursement would be, as always, in FEMA's discretion.[19]

Hence, conceding for the sake of argument that the expenditure of *any* federal funds constitutes a "substantial" federal issue, the presence of that issue in this case is purely conjectural. Federal funds may eventually be expended as a result of this action; and they just as likely may not. In the words of Justice Cardozo:

> "The most one can say is that a question of federal law is lurking in the background…A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailable to extinguish the jurisdiction of the states."

Gully, 299 U.S. at 117. Therefore, this Court should decline to exercise federal question jurisdiction under §§ 1441 and 1331 and remand the entire action to the Kent County Superior Court.[20]

### C. 42 U.S.C.A. § 4072 Does Not Provide An Independent Basis For This Court To Exercise Subject Matter Jurisdiction

42 U.S.C.A. § 4072 provides, in relevant part:

[18] Interestingly, Defendant states as the Fourth Affirmative Defense in its Answer that Plaintiffs' breach of contract claim is governed by 42 U.S.C.A. § 4072, and thus subject to that statute's one-year limitations period. Thus Defendant – who has petitioned this Court for removal – is simultaneously posturing to seek dismissal of the only count which could conceivably establish federal question jurisdiction.

[19] Even if FEMA were to file an *amicus* brief stating its intention to reimburse Defendant for any damages arising strictly in contract, Defendant must still persuade this Court that the expenditure of $20,000.00-$25,000.00 in "federal" funds constitutes a substantial federal issue justifying the exercise of federal question jurisdiction.

[20] If the Court finds that Plaintiffs' breach of contract claim is sufficient to establish federal question jurisdiction, Plaintiffs ask that the Court exercise its discretion under 28 U.S.C.A. § 1367(c) and remand the remaining state law claims to the Kent County Superior Court.

> [T]he Director [of FEMA] shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and *upon the disallowance by the Director* of any such claim…the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance *by the Director*, may institute an action *against the Director* on such claim in the United States district court for the district in which the insured property…shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

(Emphasis added). The express language of the statute creates a private cause of action against the Director of FEMA only, based on actions taken by the Director of FEMA. Nowhere does Congress mention WYOs. Still, some courts in sister circuits have held that § 4072 applies equally to suits against WYOs, thus creating federal question jurisdiction for such suits. See, e.g., Gibson v. American Bankers Ins. Co., 289 F.3d 943, 947 (6th Cir. 2002); Van Holt v. Liberty Mutual Insurance Company, 163 F.3d 161, 166-67 (3rd Cir. 1998). Other courts, however, have held that § 4072 applies only to suits against the Director of FEMA. See, e.g., Downey v. State Farm Fire & Casualty, 266 F.3d 675, 680 (7th Cir. 2001) (expressly rejecting the reasoning in Van Holt); Stanton, 78 F.Supp.2d at 1034 (same). The issue is one of first impression in the First Circuit. Plaintiffs are requesting that this Court strictly interpret the language of § 4072 and adopt the holdings of Downey and Stanton. See also Empire Healthchoice, 126 S.Ct. at 2126 (declining to exercise federal question jurisdiction in state tort suit relying on Federal Employees Health Benefits Act ("FEHBA"), in part because whereas FEHBA expressly provided for federal court jurisdiction in actions against the United States, Congress was silent about "auxiliary claims").

**D. 28 U.S.C.A. § 1337 Does Not Provide An Independent Basis For This Court To Exercise Subject Matter Jurisdiction**

On Pages 6-7 of its Notice of Removal, Defendant cites C.E.R. 1988, Inc. v. Aetna Casualty and Surety Company, 386 F.3d 263, 267 (3rd Cir. 2004) for the proposition that 28 U.S.C.A. § 1337(a) conveys federal question jurisdiction in suits against WYOs.[21] The Court made no such holding and Defendant is relying on dicta. Further, the United States Supreme Court applies the same "arising under" analysis to § 1337(a) as it does § 1331. See, e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950). Hence, Defendant cannot establish federal question jurisdiction under § 1337 unless and until it demonstrates such jurisdiction under § 1331.

**E. Any Regulations or Opinions Promulgated By FEMA Are Irrelevant In Determining Federal Question Jurisdiction**

In Paragraph 16 of its Notice of Removal, Defendant suggests that because FEMA has stated that any litigation involving a SFIP presents a "federal question," then federal question jurisdiction is appropriate. Defendant is wrong on two (2) counts. First, as discussed *infra*, the mere presence of a "federal question" does not create removal jurisdiction under § 1441. Rather, the purported federal issue must be *substantial*. See, e.g., Franchise Tax Board, 463 U.S. at 13, 27-28; Smith, 255 U.S. at 199. Otherwise, the existence of a "federal question" is relevant only insofar as which law the state or federal court will apply. Second, as this Court held in Neves v. Kolaski, 602 F.Supp. 645, 651 (D.R.I. 1985), the proposition that administrative rules can be deemed to have the "'force and effect of law'" cannot be "so loosely construed as to suggest that an administrative body may hone the subject matter jurisdiction of the federal courts." [quoting, in part, Chrysler Corp. v. Brown, 441 U.S. 281, 295 (1979)]. This is

[21] The statute states, in relevant part: "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…"

particularly so where Congress has expressed no intent to delegate one of its "exclusive and explicitly enumerated functions – to shape the jurisdiction of the lower federal courts." Id.[22]

## V. CONCLUSION

WHEREFORE, your Plaintiffs, Anne Sykes, individually and on behalf of M.S. (Minor), G.S. (Minor) and M.M. (Minor), and Shawn Sykes, respectfully request that this Honorable Court remand this action to the Kent County Superior Court pursuant to 28 U.S.C.A. § 1447(c); award Plaintiffs their costs and a reasonable attorney's fee pursuant to said statute; and award Plaintiffs any such other and further relief as this Honorable Court shall deem meet and just.

PLAINTIFFS,

By their Attorneys,

DECOF & DECOF, P.C.
One Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/ Thomas J. Marks___________________
Thomas J. Marks #7158

## CERTIFICATION

I hereby certify that on this 7th day of January 2008, I served the within document by electronic filing to the following counsel of record: Holly R. Rao, Esq., HRR@olenn-penza.com.

/S/ Thomas J. Marks_______________
Thomas J. Marks #7158

[22] Noticing a circuit split regarding the applicability of 42 U.S.C. § 4072 to WYOs, in 2004 FEMA took it upon itself to amend 44 C.F.R. § 62.22 to "confer" exclusive jurisdiction in the federal courts over suits against WYOs. FEMA exceeded its congressionally delegated authority, and thus the regulation should be deemed null and void.