**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

ANNE SYKES, individually, and on
behalf of M.S. (Minor),
and SHAWN SYKES

vs. C.A. NO.: 1:07-cv-00369-ML-LDA

FIDELITY NATIONAL PROPERTY
AND CASUALTY INSURANCE
COMPANY

**SECOND AMENDED COMPLAINT**

Now come the Plaintiffs, Anne Sykes, individually and on behalf of M.S. (Minor), and Shawn Sykes ("Plaintiffs") and hereby complain against the Defendant, Fidelity National Property and Casualty Insurance Company ("Defendant") as follows:

**Parties**

1. Plaintiff Anne Sykes is an individual residing in the City of West Warwick, County of Kent, State of Rhode Island.

2. Plaintiff Shawn Sykes is an individual residing in the City of West Warwick, County of Kent, State of Rhode Island.

3. Plaintiff M.S. is a minor residing in the City of West Warwick, County of Kent, State of Rhode Island.

4. Defendant Fidelity National Property and Casualty Insurance Company is a corporation with a principal place of business in Jacksonville, Florida.

**Facts**

5. In or around 2000, Anne Sykes, then known as Anne Massey, purchased a flood insurance policy through Smith Mack and Associates, a Rhode Island Insurance Agency with a principal place of business in Warwick, Rhode Island. First

Community Insurance Company ("First Community") acted as the "carrier" of the policy, Policy No. 38-0009568654 ("the Policy"), which was a Standard Flood Insurance Policy ("SFIP") issued by the Federal Emergency Management Agency ("FEMA"). First Community was one of many Write Your Own insurance carriers ("WYO") acting as a "fiscal agent" for the federal government under the National Flood Insurance Program ("NFIP"). The Policy was to insure premises located in West Warwick, Rhode Island ("the Premises") against flood loss.

6. The Premises is a single family home built on a slab, meaning the Premises has no basement. No portion of the Premises is located beneath ground level.

7. At all times relevant hereto, Anne Sykes and her husband, Shawn Sykes, were current on their Policy premiums and their flood insurance coverage remained in full force and effect.

8. On or about March 22, 2001, the first floor of the Premises suffered water damage as the result of a flood. Anne Sykes then filed a formal claim with First Community pursuant to the terms and conditions of the Policy; Claim No.: 101-0004635.

9. Sometime in 2001, First Community, pursuant to the terms and conditions of the Policy, paid Anne Sykes $2051.40 as coverage for the loss.

10. Sometime after 2001, Fidelity, upon information and belief, bought a book of business from First Community which included First Community's interest in the Policy. Fidelity thus assumed First Community's role as a fiscal agent for the federal government in the administration of the Policy.

11. Sometime after 2001, Fidelity, either directly through Smith Mack and Associates, solicited further business from Plaintiffs by convincing them to purchase "contents coverage" for personal property inside the Premises. Plaintiffs purchased said coverage, and at all time relevant hereto were current on their annual premium payments.

12. On or about February 7, 2004, the first floor of the Premises suffered water damage as the result of a flood. Anne Sykes then filed a formal claim with Fidelity pursuant to the terms and conditions of the Policy; Claim No.: 104-0000335.

13. Sometime in 2004, Fidelity, pursuant to the terms and conditions of the Policy, paid Anne Sykes a total of $3,831.84 as coverage for the loss.

14. On or about April 2, 2005, the first floor of the Premises suffered water damage as the result of a flood. Anne Sykes then filed a formal claim with Fidelity pursuant to the terms and conditions of the Policy ("the Claim").

15. Fidelity soon sent an independent appraiser, Colonial Claims Corporation ("Colonial"), to the Premises to survey the damage and provide a written estimate.

16. Sometime in or around April or May 2005, an agent of Colonial arrived at the Premises and completed an inspection of the water damage. Upon information and belief, the agent soon thereafter sent a written estimate to Colonial, who forwarded the same to Fidelity. The estimated cost to repair the damage was $14,320.97.

17. Plaintiffs also suffered over $5,000.00 in personal property damage.

18. During the spring and summer of 2005, Anne Sykes repeatedly called and wrote Fidelity asking about the status of the claim. Fidelity would always respond that the claim was still being processed.

19. On or about October 15, 2005, the first floor of the Premises suffered water damage as the result of a flood. Anne Sykes then attempted to file a formal claim with Fidelity pursuant to the terms and conditions of the Policy.

20. Fidelity responded by having an agent speak to Anne Sykes on the telephone. The agent informed Mrs. Sykes that Fidelity would not be sending an adjuster to survey the Premises, and that Fidelity would handle the claim strictly over the phone.

21. In or around December 2005, Anne Sykes filed a formal complaint ("the Complaint") with the Rhode Island Department of Business Regulation, Division of Insurance ("the Division"), due to Fidelity's failure to finalize the Claim, and also because of Fidelity's refusal to cooperate with the Plaintiffs regarding the October 15, 2005 loss.

22. Between December 2005 and May 2006, several communications took place between Fidelity and the Department, and between the Department and Anne Sykes, regarding the Complaint.

23. In or around February 2006, Fidelity informed the Division that it was denying both the Claim and any coverage for the October 15, 2005 loss on the basis that the damaged first floor of the Premises was a "basement," and therefore not a "covered area" under the Policy. The denial extended to the personal property destroyed. The Department then forwarded Fidelity's response to Plaintiffs.

24. Plaintiffs did not have adequate funds to repair the water damage, and therefore were forced to live with the resulting conditions.

25. Plaintiffs experienced pain and suffering as a result of having to live in these conditions.

## COUNTS ARISING FROM PROCUREMENT OF POLICY

### Count I
### (Fraud)

26. Plaintiffs incorporate the allegations contained in Paragraphs 1-25 as if set forth fully herein.

27. Defendant represented, either directly or through Smith and Mack Associates, that if Plaintiffs paid an annual premium for the year 2005, the Premises would be insured against flood loss. Defendant further represented, either directly or through Smith and

Mack Associates, that if Plaintiffs paid an additional premium for "contents coverage," the contents of the Premises would also be so insured.

28. Defendant made these representations, or authorized Smith and Mack Associates to make them, knowing that if Plaintiffs suffered a flood loss in 2005 to the first floor of the Premises, no coverage would be provided for the Premises nor any personal property contained therein.

29. Defendant made or authorized the making of these representations in order to induce Plaintiffs to rely thereon.

30. Plaintiffs reasonably and justifiably relied on these representations and have suffered damages as a result.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs and reasonable attorney fees; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**Count II**
**(Negligent Misrepresentation)**

31. Plaintiffs incorporate the allegations contained in Paragraphs 1-30 as if set forth fully herein.

32. Defendant represented, either directly or through Smith and Mack Associates, that if Plaintiffs paid an annual premium for the year 2005, the Premises would be insured against flood loss. Defendant further represented, either directly or through Smith Mack and Associates, that if Plaintiffs paid an additional premium for "contents coverage," the contents of the Premises would also be so insured.

33. Defendant should have known that if Plaintiffs suffered a flood loss in 2005 to the first floor of the Premises, no coverage would be provided for the Premises nor any personal property contained therein.

34. Defendant made or authorized the making of these representations in order to induce Plaintiffs to rely thereon.

35. Plaintiffs reasonably and justifiably relied on these representations and have suffered damages as a result.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs and reasonable attorney fees; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**Count III**
**(Unfair and Deceptive Trade Practice)**
**(Violation of R.I.G.L. § 6-13.1-1)**

36. Plaintiffs incorporate the allegations contained in Paragraphs 1-35 as if set forth fully herein.

37. Defendant's misrepresentation constitutes an unlawful, fraudulent and unfair business practice.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs and reasonable attorney fees; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

## COUNTS ARISING FROM CLAIMS ADMINISTRATION

### Count IV
**(Breach of Contract)**
**(Attorney Fees Pursuant to R.I.G.L. § 9-1-45)**

38. Plaintiffs incorporate the allegations contained in Paragraphs 1-37 as if set forth fully herein.

39. Defendant entered into a contract with Plaintiffs pursuant to which Plaintiffs paid valuable consideration in exchange for Defendant's promise to provide flood insurance for covered losses.

40. Defendant breached its promise without legal justification.

41. As a result of Defendant's breach, Plaintiffs have suffered damages.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs its actual, incidental and consequential damages; costs; a reasonable attorney's fee pursuant to R.I.G.L. § 9-1-45; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

### Count V
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

42. Plaintiffs incorporate the allegations contained in Paragraphs 1-41 as if set forth fully herein.

43. The contract between Plaintiffs and Defendant contained an implied covenant of good faith and fair dealing pursuant to which both parties agreed to deal with one another in the utmost good faith.

44. Defendant breached this implied covenant.

45. As a result of this breach, Plaintiffs have suffered damages.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment

in their favor and against the Defendant and award your Plaintiffs its actual, incidental and consequential damages; costs; a reasonable attorney's fee; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**Count VI**
**(Negligence)**

46. Plaintiffs incorporate the allegations contained in Paragraphs 1-45 as if set forth fully herein.

47. Defendant owed a duty to Plaintiffs to act with reasonable care regarding the processing, administration and management of claims Plaintiff's filed pursuant to the Policy.

48. Defendant breached this duty.

49. Defendant's breach was the actual and proximate cause of injuries suffered by Plaintiffs.

50. Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs; a reasonable attorney's fee; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**Count VII**
**(Bad Faith)**
**(Violation of R.I.G.L. § 9-1-33)**

51. Plaintiffs incorporate the allegations contained in Paragraphs 1-50 of their Complaint as if set forth fully herein.

52. Defendant lacked a reasonable basis for denying Plaintiffs' claim.

53. Defendant either knew there was no reasonable basis for the denial, or acted with reckless disregard for whether there was such reasonable basis.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment

in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs; a reasonable attorney's fee; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**Count VIII**
**(Mental Anguish And Emotional Distress)**

54. Plaintiffs incorporate the allegations contained in Paragraphs 1-53 of their Complaint as if set forth fully herein.

55. Defendant's breaches interfered with Plaintiffs' quiet enjoyment of the Premises.

56. As a result of such interference, Plaintiffs suffered mental anguish and emotional distress.

WHEREFORE, your Plaintiffs request that this Honorable Court enter judgment in their favor and against the Defendant and award your Plaintiffs compensatory damages; punitive damages; costs; a reasonable attorney's fee; and any other further relief, legal or equitable, that this Honorable Court shall deem meet and just.

**JURY TRIAL DEMANDED**

**Plaintiffs hereby demand a trial by jury on all counts so triable, and designate Thomas J. Marks as their trial counsel.**

PLAINTIFFS,

By their Attorneys,

DECOF & DECOF, P.C.
1 Smith Hill
Providence, RI 02903
Telephone: (401) 272-1110
Facsimile: (401) 351-6641

/S/ Thomas J. Marks______________
Thomas J. Marks #7158

**CERTIFICATION**

I hereby certify that on this 7th day of January 2008, I served the within document by electronic filing to the following counsel of record: Holly R. Rao, Esq., HRR@olenn-penza.com.

/S/ Thomas J. Marks________________
Thomas J. Marks #7158