UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANNE SYKES, individually and on behalf of M.S. (minor), and SHAWN SYKES | * | |
| versus | * | C.A. 1:07-cv-00369-ML-LDA |
| FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY | * | |

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

NOW INTO COURT comes the Defendant, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY ("FNPAC"), which is a Write-Your-Own ("WYO") Program carrier participating in the United States government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] and appearing herein in its "fiduciary"[2] capacity as the "fiscal agent of the United States,"[3] for the purpose of filing this answer and affirmative defenses to Plaintiffs' Second Amended Complaint.

ANSWER

Defendant, FNPAC, hereby responds to the specific allegations contained in the Second Amended Complaint, as follows:

1. Neither admitted nor denied as defendant is without sufficient information as to veracity of the allegations contained in this paragraph.

2. Neither admitted nor denied as defendant is without sufficient information as to

[1] 42 U.S.C. §4001, *et seq.*

[2] 44 C.F.R. §62.23(f).

[3] 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna,* 143 F.3d 951, 953 (5th Cir.1998).

veracity of the allegations contained in this paragraph.

3. Neither admitted nor denied as defendant is without sufficient information as to veracity of the allegations contained in this paragraph.

4. The allegations contained in paragraph 4 are admitted with the clarification that it is appearing herein as a WYO program carrier.

5. The allegations contained in paragraph 5 require no answer of this Defendant. However, upon information and belief such allegations are admitted.

6. The allegations contained in paragraph 6 are denied.

7. The allegations contained in paragraph 7 are admitted.

8. Neither admitted nor denied as defendant is without sufficient information as to veracity of the allegations contained in this paragraph.

9. The allegations contained in paragraph 9 require no answer of this Defendant. Upon information and belief, Defendant FNPAC believes that a payment was made as a result of the ensuing flood claim.

10. The allegations contained in paragraph 10 are admitted to the extent that FNPAC bought the book of flood business from First Community. Answering further, Defendant FNPAC admits that it is a qualified and registered WYO carrier acting as the fiscal agent for the government.

11. The allegations contained in paragraph 11 require no answer of this Defendant.

12. The allegations contained in paragraph 12 are admitted only to the extent that the Plaintiff submitted a claim to FNPAC under the Standard Flood Insurance Policy. All other allegations are denied.

13. The allegations contained in paragraph 13 are admitted only to the extent that FNPAC

made a payment in the amount of $3,831.84 as a result of the above flood claim. All other allegations, including inferences, are denied.

14. The allegations contained in paragraph 14 are admitted only to the extent that Plaintiff submitted a claim to FNPAC under the Standard Flood Insurance Policy. All other allegations are denied.

15. The allegations contained in paragraph 15 are admitted.

16. The allegations contained in paragraph 16 are admitted only to the extent that Colonial forwarded adjustment recommendations to FNPAC. All other allegations are denied.

17. The allegations contained in paragraph 17 are denied for lack of sufficient information to for a belief therein.

18. The allegations contained in paragraph 18 are denied as being vague and ambiguous.

19. The allegations contained in paragraph 19 are admitted only to the extent that Plaintiff contacted FNPAC in an attempt to file a flood claim under the Standard Flood Insurance Policy. All other allegations are denied.

20. The allegations contained in paragraph 20 are denied for lack of sufficient information to form a belief therein.

21. The allegations contained in paragraph 21 appear to require no answer of Defendant FNPAC. To the extent that an answer is required, such allegations are denied.

22. The allegations contained in paragraph 22 are denied as being vague and ambiguous.

23. The allegations contained in paragraph 23 are admitted only to the extent that FNPAC communicated with the Rhode Island Department of Insurance. As for the specific communications by and between FNPAC and the Department of Insurance, such communications, being a written

document, are their own best evidence. All other allegations are denied.

24. The allegations contained in paragraph 24 are denied for lack of sufficient information.

25. The allegations contained in paragraph 25 are denied for lack of sufficient information.

26. The allegations contained in paragraph 26 are responded to by FNPAC re-averring all prior responses above.

27. The allegations contained in paragraph 27 are denied for lack of sufficient information to form a belief therein. Answering further, the duly licensed property and casualty agent acts for the insured as per federal law. See 44 C.F.R. §61.5(e).

28. The allegations contained in paragraph 28 are denied. See 44 C.F.R. §61.5(e).

29. The allegations contained in paragraph 29 are denied. Answering further, because the Standard Flood Insurance Policy is a codified federal regulation any reliance alleged by Plaintiffs are unreasonable as a matter of federal law.

30. The allegations contained in paragraph 30 are denied. Answering further, because the Standard Flood Insurance Policy is a codified federal regulation any reliance alleged by Plaintiffs are unreasonable as a matter of federal law. In further answering, the allegations contained in the unnumbered paragraph following paragraph 30 are denied.

31. The allegations contained in paragraph 31 are responded to by Defendant FNPAC re-averring all prior responses above.

32. The allegations contained in paragraph 32 are denied.

33. The allegations contained in paragraph 33 are denied.

34. The allegations contained in paragraph 34 are denied.

35. The allegations contained in paragraph 35 are denied. Answering further, the allegations contained in the unnumbered paragraph 35 are denied.

36. The allegations contained in paragraph 36 are responded to by FNPAC re-averring all prior responses above.

37. The allegations contained in paragraph 37 are denied and are denied as written because such allegations are, or call for, legal conclusions based upon substantive issues of fact and/or law. Answering further, the allegations contained in the unnumbered paragraph following paragraph 37 are denied.

38. The allegations contained in paragraph 38 are responded to by Defendant FNPAC reavering all prior responses above.

39. The allegations contained in paragraph 39 are admitted only to the extent that Plaintiffs pay the premium to Defendant FNPAC for a Standard Flood Insurance Policy. All other allegations, including inferences therein, are denied.

40. The allegations contained in paragraph 40 are denied as such allegations constitute a legal conclusion.

41. The allegations contained in paragraph 41 are denied as such allegations contain a legal conclusion. Answering further, the allegations contained in the unnumbered paragraph following paragraph 41 are denied.

42. The allegations contained in paragraph 42 are responded to by Defendant FNPAC reavering all prior responses above.

43. The allegations contained in paragraph 43 are denied. Answering further, the

Standard Flood Insurance Policy, which is a codified federal regulation at 44 C.F.R. Pt. 61 App. A(1), is its own best evidence.

44. The allegations contained in paragraph 44 are denied as such allegations constitute a legal conclusion.

45. The allegations contained in paragraph 45 are denied as such allegations contained a legal conclusion. Answering further, the allegations contained in the unnumbered paragraph following paragraph 45 are denied.

46. The allegations contained in paragraph 46 are responded to by Defendant FNPAC reavering all prior responses above.

47. The allegations contained in paragraph 47 are denied, as such allegations are, or call for, a legal conclusion based upon substantive issues of fact and/or law.

48. The allegations contained in paragraph 48 are denied, as such allegations constitute a legal conclusion.

49. The allegations contained in paragraph 49 are denied, as such allegations constitute a legal conclusion.

50. The allegations in paragraph 50 are denied for lack of sufficient information. Answering further, the allegations contained in the unnumbered paragraph following paragraph 50 are denied.

51. The allegations contained in paragraph 51 are responded to by Defendant FNPAC reavering all prior responses above.

52. The allegations contained in paragraph 52 are denied.

53. The allegations contained in paragraph 53 are denied and are denied as such

allegations imply a legal conclusion. Answering further, the allegations contained in the unnumbered paragraph following paragraph 53 are denied.

54. The allegations contained in paragraph 54 are responded to by Defendant FNPAC reavering all prior responses above.

55. The allegations contained in paragraph 55 are denied as such allegations are premised upon legal conclusions.

56. The allegations contained in paragraph 56 are denied. Answering further, the allegations contained in the unnumbered paragraph following paragraph 56 are denied.

The allegations contained in the section entitled "Jury Trial Demanded" appears to require no answer of Defendant FNPAC. However, Defendant FNPAC contends that trial by jury is not permissible against WYO carriers participating in the National Flood Insurance Program, and it intends to contest plaintiff's jury trial demand.

AFFIRMATIVE ANSWERS

NOW COMES Defendant, Fidelity National Property and Casualty Insurance Company, for the purpose of asserting the following affirmative defenses:

1. NO CAUSE OF ACTION

The Plaintiffs' Second Amended Complaint fails to set forth a claim upon which relief may be granted by this Honorable Court.

2. CONCEALMENT OR FRAUD AND POLICY VOIDANCE

The Defendant pleads as an affirmative defenses Article VII(B) of the Standard Flood Insurance Policy, which states:

1. With respect to all insureds under this policy, this policy:
a. Is void;
b. Has no legal force or effect;

c. Cannot be renewed; and
d. Cannot be replaced by a new NFIP policy, if, before or after a loss, you or any other insured or your agent have at any time:
(1) Intentionally concealed or misrepresented any material fact or circumstance;
(2) Engaged in fraudulent conduct; or
(3) Made false statements; relating to this policy or any other NFIP insurance.

2. This policy will be void as of the date wrongful acts described in B.1.above were committed.

3. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

4. This policy is also void for reasons other than fraud, misrepresentation, or wrongful act. This policy is void from its inception and has no legal force under the following conditions:
a. If the property is located in a community that was not participating in the NFIP on the policy's inception date and did not join or reenter the program during the policy term and before the loss occurred; or
b. If the property listed on the application is otherwise not eligible for coverage under the NFIP.

## 3. NO RIGHT OF ACTION

There are no "implied" private rights of action available in the context of the comprehensive and pervasive statutory and regulatory scheme that is commonly referred to as the National Flood Insurance Program. To the extent that Plaintiffs seek any recovery from the Defendant under federal law beyond what is provided for in the Standard Flood Insurance Policy, Defendant affirmatively asserts that no right of action exists.

## 4. JURISDICTION AND VENUE

Jurisdiction and venue over this dispute are exclusive to this Honorable Court pursuant to 42 U.S.C. §4072 and 44 C.F.R. Pt. 61, App. A(1), Art. VII(R). Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. §1331. Jurisdiction over the state law claims may exists pursuant to 28 U.S.C. §1367.

## 5. THE INSURING AGREEMENT

The responsibilities of the WYO Program carrier to the Insured, and vice versa, are provided in the insuring agreement of the Standard Flood Insurance Policy. 44 C.F.R. Pt. 61, App. A(1) at "Agreement." Pursuant to that regulation/contract, Plaintiff has no cause to complain of the strictures of the NFIP, for the Insured agreed to be bound by all program rules as a condition of the policy of

flood insurance purchased.

6. CHARGED WITH KNOWLEDGE

The Plaintiffs are charged with the knowledge of the terms and conditions of the Standard Flood Insurance Policy and the requirements under the National Flood Insurance Program, as a matter of federal law.

7. DUTIES OF THE INSURED

Plaintiffs are responsible for reading the Standard Flood Insurance Policy, as well as any renewal notices, and is presumed to know the provisions of the policy, including the Insurer's limits of liability.

8. THE DECLARATIONS PAGE

The Declarations Page is a part of the Standard Flood Insurance Policy itself. The Declarations Page describes the term of the policy, limits of coverage, and displays the premium. The question of whether Plaintiffs are entitled to any sums under the Standard Flood Insurance Policy, and if so, how much, is strictly governed by the Policy's Declarations Page, and all of the Policy's terms and conditions as set forth in the Standard Flood Insurance Policy at 44 C.F.R. Pt. 61, App. A(1), *in pari materia* with all applicable provisions of the Code of Federal Regulations, as well as the National Flood Insurance Act.

9. FISCAL AGENT STATUS

By statute, the Defendant is the fiscal agent of the United States. 42 U.S.C. §4071(a)(1). By regulation, Defendant's fiduciary duty is owed to the federal government, and is "to assure that any taxpayer funds are accounted for and appropriately expended. 44 C.F.R. §62.23(f). Also by regulation, all company claim standards are subordinate to federal government's nationally uniform and preset claims standards that FEMA has devised on authority of 42 U.S.C. §4019. Those standards govern all of the WYO Program companies and all of the insureds in a nationally uniform manner.

10. NO MEETING OF THE MINDS

To the extent that the Plaintiffs contest the above affirmative defense, or otherwise disputes any of the terms, conditions, or limits of the Standard Flood Insurance Policy, then Defendant asserts that there was never a "meeting of the minds" to form a contract of insurance between the parties and the Standard Flood Insurance Policy is void.

11. CONDITIONS PRECEDENT

The Standard Flood Insurance Policy expressly conditions the right to sue for further benefits under the Policy upon the Insured's *prior compliance* with "all the requirements of the policy." In order to obtain the federal benefits under the Policy, the Insured must meet the burden of proof to establish h pre-suit full, complete, truthful, and detailed compliance with "all" requirements of the Standard Flood Insurance Policy, including but not limited to the notice of loss, separation of property, documentation, cooperation, proof of loss, and other requirements. See 44 C.F.R. Pt. 61, App. A(1), Art. VII, each provision of which is expressly pleaded herein by reference.

12. LIMITED SCOPE OF COVERAGE

Congress made clear at the outset of the adoption of the NFIP that the actual scope of coverage would be limited via Executive Branch regulations. See 42 U.S.C. §4013. As the courts have consistently recognized, the Standard Flood Insurance Policy only pays for damage caused by "direct physical loss by or from flood," and even this is limited by various conditions and exclusions. Numerous economic, consequential and incidental damages arising from flooding are not covered. Indeed many losses that would not have occurred "but for" a flood simply are outside the scope of benefits that are available under this one federal program. As such, Defendant affirmatively asserts that the scope of recovery, if any, is limited to what is available under the specific terms and conditions of the Standard Flood Insurance Policy. 44 C.F.R. Pt. 61, App. A(1).

13. DEFINITIONS UNDER THE FEDERAL FLOOD POLICY

Defendant avers as affirmative defense those definitions set forth in ARTICLE II of the Standard Flood Insurance Policy. Defendant also pleads those definitions set for at 44 C.F.R. § 59.1. Although all definitions are plead herein, those that are directly pertinent at bar under Article II are the following:

B. The following are the other key definitions we use in this policy:

1. Act. The National Flood Insurance Act of 1968 and any amendments to it.

2. Actual Cash Value. The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3. Application. The statement made and signed by you or your agent in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy. For us to issue you a policy, the correct premium payment must accompany the application.

4. Base Flood. A flood having a one percent chance of being equaled or exceeded in any given year.

5. Basement. Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

6. Building.

a. A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;

b. A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or

c. A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

Building does not mean a gas or liquid storage tank or a recreational vehicle, park trailer or other similar vehicle, except as described in B.6.c. above.

***

10. Declarations Page. A computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy.

11. Described Location. The location where the insured building(s) or personal property are found. The described location is shown on the Declarations Page.

12. Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

13. Dwelling. A building designed for use as a residence for no more than four families or a single-family unit in a building under a condominium form of ownership.

14. Elevated Building. A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

***

18. Improvements. Fixtures, alterations, installations, or additions comprising a part of the insured dwelling or the apartment in which you reside.

***

20. National Flood Insurance Program (NFIP). The program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

21. Policy. The entire written contract between you and us. It includes:

a. This printed form;

b. The application and Declarations Page;

c. Any endorsement(s) that may be issued; and

d. Any renewal certificate indicating that coverage has been instituted for a new policy and new policy term.

Only one dwelling, which you specifically described in the application, may be insured under this policy.

22. Pollutants. Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

23. Post-FIRM Building. A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

***

28. Valued Policy. A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy.

14. LIMITATION OF BUILDING COVERAGE

Defendant avers as an affirmative defense those limitations of coverage set forth at ARTICLE III COVERAGE A – BUILDING COVERAGE. The Standard Flood Insurance Policy provides coverage for direct physical loss by or from flood to the dwelling at the described location, subject

to the limitations set forth at paragraphs 1 through 8 inclusive, which states:

> We insure against direct physical loss by or from flood to:
>
> 1. The dwelling at the described location, or for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.
>
> 2. Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be separately insured.
>
> 3. A detached garage at the described location. Coverage is limited to no more than 10% of the limit of liability on the dwelling. Use of this insurance is at your option but reduces the building limit of liability. We do not cover any detached garage used or held for use for residential (i.e., dwelling), business, or farming purposes.
>
> 4. Materials and supplies to be used for construction, alteration, or repair of the dwelling or a detached garage while the materials and supplies are stored in a fully enclosed building at the described location or on an adjacent property.
>
> 5. A building under construction, alteration, or repair at the described location.
> a. If the structure is not yet walled or roofed as described in the definition for building (see II.B.6.a.) then coverage applies:
> (1) Only while such work is in progress; or
> (2) If such work is halted, only for a period of up to 90 continuous days thereafter.
> b. However, coverage does not apply until the building is walled and roofed if the lowest floor, including the basement floor, of a non-elevated building or the lowest elevated floor of an elevated building is:
> (1) Below the base flood elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or
> (2) Below the base flood elevation adjusted to include the effect of wave action in Zones VE or V1-V30.
> The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.
>
> 6. A manufactured home or a travel trailer as described in the Definitions section (see II.B.6.b. and II.B.6.c.).
> If the manufactured home or travel trailer is in a special flood hazard area, it must

be anchored in the following manner at the time of the loss:
a. By over-the-top or frame ties to ground anchors; or
b. In accordance with the manufacturer's specifications; or
c. In compliance with the community's floodplain management requirements unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

7. The following items of property which are covered under Coverage A only:
a. Awnings and canopies;
b. Blinds;
c. Built-in dishwashers;
d. Built-in microwave ovens;
e. Carpet permanently installed over unfinished flooring;
f. Central air conditioners;
g. Elevator equipment;
h. Fire sprinkler systems;
i. Walk-in freezers;
j. Furnaces and radiators;
k. Garbage disposal units;
l. Hot water heaters, including solar water heaters;
m. Light fixtures;
n. Outdoor antennas and aerials fastened to buildings;
o. Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;
p. Plumbing fixtures;
q. Pumps and machinery for operating pumps;
r. Ranges, cooking stoves, and ovens;
s. Refrigerators; and
t. Wall mirrors, permanently installed.

8. Items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement, regardless of the zone. Coverage is limited to the following:
a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
(1) Central air conditioners;
(2) Cisterns and the water in them;
(3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;
(4) Electrical junction and circuit breaker boxes;
(5) Electrical outlets and switches;
(6) Elevators, dumbwaiters and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;

(7) Fuel tanks and the fuel in them;
(8) Furnaces and hot water heaters;
(9) Heat pumps;
(10) Nonflammable insulation in a basement;
(11) Pumps and tanks used in solar energy systems;
(12) Stairways and staircases attached to the building, not separated from it by elevated walkways;
(13) Sump pumps;
(14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;
(15) Well water tanks and pumps;
(16) Required utility connections for any item in this list; and
(17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.
b. Clean-up.

15. LIMITATION OF PERSONAL PROPERTY/CONTENTS

Defendant avers as an affirmative defense those limitations of coverage set forth at ARTICLE III COVERAGE B – PERSONAL PROPERTY. The Standard Flood Insurance Policy provides coverage for direct physical loss by or from flood to personal property inside a building at the described location, as follows:

1. If you have purchased personal property coverage, we insure against direct physical loss by or from flood to personal property inside a building at the described location, if:
a. The property is owned by you or your household family members; and
b. At your option, the property is owned by guests or servants.
Personal property is also covered for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.
Personal property in a building that is not fully enclosed must be secured to prevent flotation out of the building. If the personal property does float out during a flood, it will be conclusively presumed that it was not reasonably secured. In that case there is no coverage for such property.

2. Coverage for personal property includes the following property, subject to B.1. above, which is covered under Coverage B only:
a. Air conditioning units, portable or window type;
b. Carpets, not permanently installed, over unfinished flooring;
c. Carpets over finished flooring;
d. Clothes washers and dryers;
e. "Cook-out" grills;
f. Food freezers, other than walk-in, and food in any freezer; and

g. Portable microwave ovens and portable dishwashers.

3. Coverage for items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a basement, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
a. Air conditioning units, portable or window type;
b. Clothes washers and dryers; and
c. Food freezers, other than walk-in, and food in any freezer.

4. If you are a tenant and have insured personal property under Coverage B in this policy, we will cover such property, including your cooking stove or range and refrigerator. The policy will also cover improvements made or acquired solely at your expense in the dwelling or apartment in which you reside, but for not more than 10% of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

5. If you are the owner of a unit and have insured personal property under Coverage B in this policy, we will also cover your interior walls, floor, and ceiling (not otherwise covered under a flood insurance policy purchased by your condominium association) for not more than 10% of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

6. Special Limits. We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:
a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;
b. Rare books or autographed items;
c. Jewelry, watches, precious and semi-precious stones, or articles of gold, silver, or platinum;
d. Furs or any article containing fur which represents its principal value; or
e. Personal property used in any business.

7. We will pay only for the functional value of antiques.

16. LIMITATION OF OTHER COVERAGES

Defendant avers as an affirmative defense those limitations of coverage set forth at ARTICLE III COVERAGE C – OTHER COVERAGES – The Standard Flood Insurance Policy provides as follows:

1. Debris Removal.
a. We will pay the expense to remove non-owned debris that is on or in insured property and debris of insured property anywhere.
b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.
c. This coverage does not increase the Coverage A or Coverage B Limit of Liability.

2. Loss Avoidance Measures
a. Sandbags, Supplies, and Labor
(1) We will pay up to $1,000 for costs you incur to protect the insured building from a flood or imminent danger of flood, for the following:
(a) Your reasonable expenses to buy:
(i) Sandbags, including sand to fill them;
(ii) Fill for temporary levees;
(iii) Pumps; and
(iv) Plastic sheeting and lumber used in connection with these items.
(b) The value of work, at the Federal minimum wage, that you or a member of your household perform.
(2) This coverage for Sandbags, Supplies and Labor only applies if damage to insured property by or from flood is imminent and the threat of flood damage is apparent enough to lead a person of common prudence to anticipate flood damage. One of the following must also occur:
(a) A general and temporary condition of flooding in the area near the described location must occur, even if the flood does not reach the building; or
(b) A legally authorized official must issue an evacuation order or other civil order for the community in which the building is located calling for measures to preserve life and property from the peril of flood.
This coverage does not increase the Coverage A or Coverage B Limit of Liability.
b. Property Removed to Safety
(1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described location that contains the property in order to protect it from flood or the imminent danger of flood.
Reasonable expenses include the value of work, at the Federal minimum wage, you or a member of your household perform.
(2) If you move insured property to a location other than the described location that contains the property, in order to protect it from flood or the imminent danger of flood, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed building or otherwise reasonably protected from the elements.
Any property removed, including a moveable home described in II.6.b.and c., must be placed above ground level or outside of the special flood hazard area.
This coverage does not increase the Coverage A or Coverage B Limit of Liability.

3. Condominium Loss Assessments.
a. If this policy insures a unit, we will pay, up to the Coverage A limit of liability, your share of loss assessments charged against you by the condominium association in accordance with the condominium association's articles of association, declarations and your deed.
The assessment must be made as a result of direct physical loss by or from flood during the policy term, to the building's common elements.
b. We will not pay any loss assessment charged against you:
(1) And the condominium association by any governmental body;
(2) That results from a deductible under the insurance purchased by the condominium association insuring common elements;
(3) That results from a loss to personal property, including contents of a condominium building;
(4) That results from a loss sustained by the condominium association that was not reimbursed under a flood insurance policy written in the name of the association under the Act because the building was not, at the time of loss, insured for an amount equal to the lesser of:
(a) 80% or more of its full replacement cost; or
(b) The maximum amount of insurance permitted under the Act;
(5) To the extent that payment under this policy for a condominium building loss, in combination with payments under any other NFIP policies for the same building loss, exceeds the maximum amount of insurance permitted under the Act for that kind of building; or
(6) To the extent that payment under this policy for a condominium building loss, in combination with any recovery available to you as a tenant in common under any NFIP condominium association policies for the same building loss, exceeds the amount of insurance permitted under the Act for a single-family dwelling.
Loss assessment coverage does not increase the Coverage A Limit of Liability.

17. LIMITATIONS FOR INCREASED COSTS OF COMPLIANCE

Defendant avers as an affirmative defense those limitations of coverage set forth at ARTICLE III COVERAGE D – INCREASED COST OF COMPLIANCE – The Standard Flood Insurance Policy provides coverage for complying with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage, but only for those activities that are eligible, including elevation, floodproofing, relocation, or demolition (or any combination of those activities), as follows:

1. General.
This policy pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation,

or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

a. Non-residential structures.

b. Residential structures with basements that satisfy FEMA's standards published in the Code of Federal Regulations [44 CFR 60.6 (b) or (c) ].

2. Limit of Liability.

We will pay you up to $30,000 under this Coverage D--Increased Cost of Compliance, which only applies to policies with building coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the application and which appears on the Declarations Page. But the maximum you can collect under this policy for both Coverage A--Building Property and Coverage D--Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

3. Eligibility

a. A structure covered under Coverage A--Building Property sustaining a loss caused by a flood as defined by this policy must:

(1) Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

(a) The structure is covered by a contract of flood insurance issued under the NFIP.

(b) The structure has suffered flood damage on two occasions during a 10-year period which ends on the date of the second loss.

(c) The cost to repair the flood damage, on average, equaled or exceeded 25% of the market value of the structure at the time of each flood loss.

(d) In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

(2) Be a structure that has had flood damage in which the cost to repair equals or exceeds 50% of the market value of the structure at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

b. This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the National Flood Insurance Program found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

(1) 3.a.(1) above.

(2) Elevation or floodproofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood

elevations. This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for flood-damaged structures to elevations derived solely by the community.

(3) Elevation or floodproofing above the base flood elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the base flood elevation.

c. Under the minimum NFIP criteria at 44 CFR 60.3(b)(4), States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the base flood elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage D.

d. This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g. below.

e. This coverage will also pay to bring a flood-damaged structure into compliance with state or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

4. Conditions.

a. When a structure covered under Coverage A--Building Property sustains a loss caused by a flood, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the building debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

b. When the building is repaired or rebuilt, it must be intended for the same occupancy as the present building unless otherwise required by current floodplain management ordinances or laws.

5. Exclusions.

Under this Coverage D (Increased Cost of Compliance) we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the Emergency Program.

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or

neutralize, or in any way respond to, or assess the effects of pollutants.

c. The loss in value to any insured building or other structure due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a building demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

(1) Until the building is elevated, floodproofed, demolished, or relocated on the same or to another premises; and

(2) Unless the building is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed two years.

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or improvements made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the NFIP's minimum requirements. This includes any situation where the insured has received from the State or community a variance in connection with the current flood loss to rebuild the property to an elevation below the base flood elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any structure insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a condominium association on individual condominium unit owners to pay increased costs of repairing commonly owned buildings after a flood in compliance with State or local floodplain management ordinances or laws.

6. Other Provisions.

a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80% insurance-to-value requirement for replacement cost coverage as set forth in VII. General Conditions, V. Loss Settlement.

b. All other conditions and provisions of the policy apply.

18. PROPERTY NOT COVERED

Defendant avers as an affirmative defense ARTICLE IV PROPERTY NOT COVERED, which includes those specific items of property for which coverage is not provided under the Standard Flood Insurance Policy even if the damages to those items were caused directly by or from flooding:

We do not cover any of the following:

1. Personal property not inside a building;

2. A building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a building used as a boathouse or any structure or building into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in the Definitions section (see II.B.6.c.) whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:
a. Used mainly to service the described location or
b. Designed and used to assist handicapped persons, while the vehicles or machines are inside a building at the described location;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. Buildings or units and all their contents if more than 49% of the actual cash value of the building is below ground, unless the lowest level is at or above the base flood elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment, such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these Acts;

16. Personal property you own in common with other unit owners comprising the membership of a condominium association.

19. EXCLUSIONS

Defendant avers as an affirmative defense those exclusions set forth in ARTICLE V EXCLUSIONS:

A. We only pay for direct physical loss by or from flood, which means that we do not pay you for:
1. Loss of revenue or profits;
2. Loss of access to the insured property or described location;
3. Loss of use of the insured property or described location;
4. Loss from interruption of business or production;
5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason;
6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D--Increased Cost of Compliance; or
7. Any other economic loss you suffer.

B. We do not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date:
1. The policy term begins; or
2. Coverage is added at your request.

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:
1. Earthquake;
2. Landslide;

3. Land subsidence;
4. Sinkholes;
5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or
6. Gradual erosion.

We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see II.A.1.c. and II.A.2.).

D. We do not insure for direct physical loss caused directly or indirectly by any of the following:
1. The pressure or weight of ice;
2. Freezing or thawing;
3. Rain, snow, sleet, hail, or water spray;
4. Water, moisture, mildew, or mold damage that results primarily from any condition:
a. Substantially confined to the dwelling; or
b. That is within your control, including but not limited to:
(1) Design, structural, or mechanical defects;
(2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or
(3) Failure to inspect and maintain the property after a flood recedes;
5. Water or water-borne material that:
a. Backs up through sewers or drains;
b. Discharges or overflows from a sump, sump pump or related equipment; or
c. Seeps or leaks on or through the covered property;

unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water;
6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;
7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;
8. Theft, fire, explosion, wind, or windstorm;
9. Anything you or any member of your household do or conspires to do to deliberately cause loss by flood; or
10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government

program.

F. We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance.

20. CAUSATION

Some or all of the damages claimed by the Plaintiffs were the result of causes not within the scope of the Standard Flood Insurance Policy, including damage that was preexisting, caused by non-covered perils (such as wind or wind-driven rain), and/or damage that although caused by the flood is excluded or otherwise not covered under the Standard Flood Insurance Policy.

21. MITIGATION

If any damages are a result of a failure by the Plaintiffs to take reasonable steps to mitigate the loss, those damages are not recoverable.

22. REQUIREMENTS IN CASE OF LOSS

Defendant avers as an affirmative defense those requirements set forth in Article VII(J) of the Standard Flood Insurance Policy:

In case of a flood loss to insured property, you must:

1. Give prompt written notice to us;

2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
a. The date and time of loss;
b. A brief explanation of how the loss happened;
c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
d. Details of any other insurance that may cover the loss;

e. Changes in title or occupancy of the covered property during the term of the policy;
f. Specifications of damaged buildings and detailed repair estimates;
g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
h. Details about who occupied any insured building at the time of loss and for what purpose; and
i. The inventory of damaged personal property described in J.3. above.

5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6. You must cooperate with the adjuster or representative in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

23. DOCUMENTATION REQUIREMENT

Pursuant to Article VII(K) of the Standard Flood Insurance Policy, Defendant is specifically requesting in writing that the Plaintiffs furnish a complete inventory of the lost, damaged, or destroyed property, including quantities and cost, actual cash values, amounts of loss claimed, and any written plans and specifications for repair. Further, as per Article VII(J)(3), the Plaintiffs must attach all bills, receipts and related documents, particularly if the repairs have been completed. Additionally, Plaintiffs should provide the requested documentation in such a format as to clearly show the materials, supplies and repairs correlate to damaged items claimed.

24. PAIRS AND SET CLAUSE

The Defendant pleads as an affirmative defense the pairs and set clause of the SFIP at Article VII(A), which states:

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation, or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

25. SUBROGATION CLAUSE

The Defendant pleads as an affirmative defense the subrogation clause set forth in Article VII(S), which states as follows:

Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

26. LOSS SETTLEMENT

The Defendant pleads as an affirmative defense Article VII(V), which provides the method for settling losses as follows:

1. Introduction

This policy provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and Actual Cash Value. Each method is used for a different type of property, as explained in a-c. below.
a. Replacement Cost Loss Settlement, described in V.2. below, applies to a single-family dwelling provided:
(1) It is your principal residence, which means that, at the time of loss, you or your spouse lived there for 80% of:
(a) The 365 days immediately preceding the loss; or
(b) The period of your ownership, if you owned the dwelling for less than 365 days; and
(2) At the time of loss, the amount of insurance in this policy that applies to the dwelling is 80% or more of its full replacement cost immediately before the loss,

or is the maximum amount of insurance available under the NFIP.
b. Special Loss Settlement, described in V.3. below, applies to a single-family dwelling that is a manufactured or mobile home or a travel trailer.
c. Actual Cash Value loss settlement applies to a single-family dwelling not subject to replacement cost or special loss settlement, and to the property listed in V.4. below.

2. Replacement Cost Loss Settlement

The following loss settlement conditions apply to a single-family dwelling described in V.1.a. above:
a. We will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
(1) The building limit of liability shown on your Declarations Page;
(2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; or
(3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.
b. If the dwelling is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the dwelling had been rebuilt at its former location.
c. When the full cost of repair or replacement is more than $1,000, or more than 5% of the whole amount of insurance that applies to the dwelling, we will not be liable for any loss under V.2.a. above or V.4.a.(2) below unless and until actual repair or replacement is completed.
d. You may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. You may then make claim for any additional liability according to V.2.a., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.
e. If the community in which your dwelling is located has been converted from the Emergency Program to the Regular Program during the current policy term, then we will consider the maximum amount of available NFIP insurance to be the amount that was available at the beginning of the current policy term.

3. Special Loss Settlement

a. The following loss settlement conditions apply to a single-family dwelling that:
(1) is a manufactured or mobile home or a travel trailer, as defined in II.B.6.b. and c.,
(2) is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled, and
(3) is your principal residence as specified in V.1.a.(1) above.

b. If such a dwelling is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its pre-damage condition, we will, at our discretion pay the least of the following amounts:
(1) The lesser of the replacement cost of the dwelling or 1.5 times the actual cash value, or
(2) The building limit of liability shown on your Declarations Page.
c. If such a dwelling is partially damaged and, in our judgment, it is economically feasible to repair it to its pre-damage condition, we will settle the loss according to the Replacement Cost conditions in V.2.above.

4. Actual Cash Value Loss Settlement

The types of property noted below are subject to actual cash value (or in the case of V.4.a.(2), below, proportional) loss settlement.
a. A dwelling, at the time of loss, when the amount of insurance on the dwelling is both less than 80% of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the NFIP. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that dwelling:
(1) The actual cash value, as defined in II.B.2., of the damaged part of the dwelling; or
(2) A proportion of the cost to repair or replace the damaged part of the dwelling, without deduction for physical depreciation and after application of the deductible. This proportion is determined as follows: If 80% of the full replacement cost of the dwelling is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the amount of insurance that represents 80% of its full replacement cost. But if 80% of the full replacement cost of the dwelling is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the maximum amount of insurance available under the NFIP.
b. A two-, three-, or four-family dwelling.
c. A unit that is not used exclusively for single-family dwelling purposes.
d. Detached garages.
e. Personal property.
f. Appliances, carpets, and carpet pads.
g. Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.
h. Any property covered under this policy that is abandoned after a loss and remains as debris anywhere on the described location.
i. A dwelling that is not your principal residence.

5. Amount of Insurance Required

To determine the amount of insurance required for a dwelling immediately before the loss, we do not include the value of:
a. Footings, foundations, piers, or any other structures or devices that are below the undersurface of the lowest basement floor and support all or part of the dwelling;
b. Those supports listed in V.5.a. above, that are below the surface of the ground inside the foundation walls if there is no basement; and
c. Excavations and underground flues, pipes, wiring, and drains.
Note: The Coverage D--Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

27. WAIVERS

FEMA has reserved unto itself the exclusive authority to waive program requirements. See 44 C.F.R. §61.13(d), §62.23(k), and Standard Flood Insurance Policy Article VII(D). Defendant affirmatively pleads that it cannot legally waive program requirements; instead, it is required by the Constitution and judicial precedent to strictly construe and enforce all of FEMA's requirements for NFIP claims disputes. In this matter, FEMA has specifically denied the Plaintiff's claims.

28. NO DETRIMENTAL RELIANCE

Plaintiffs cannot rely on any alleged misrepresentations of the Defendant or any other person, whether an employee of Defendant or otherwise. Further, no theory of detrimental reliance upon any alleged misrepresentations can possibly succeed in this case as a matter of law. United States Supreme Court precedents bar such claims in the context of federal insurance programs. Moreover, FEMA's regulations expressly provide that any misrepresentation as to the scope of coverage afforded by the Standard Flood Insurance Policy is void as a matter of federal law. 44 C.F.R. §61.5(e). Similarly, the Standard Flood Insurance Policy bars all claims of reliance in the context of claims issues. 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(5), (7), and (8).

29. GOVERNANCE OF FEMA'S GUIDELINES

Defendant is a signatory to the National Flood Insurance Act of 1968, and applicable federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B, and is authorized by the Federal Insurance Administration to issue the Standard Flood Insurance Policy on behalf of the federal government under Defendant's logo. Defendant agrees to abide by all rules and regulations promulgated by the Federal Insurance Administration and the Federal Emergency Management Agency when it issues a Standard Flood Insurance Policy. Defendant does not have the authority to change, alter, or interpret the underwriting or claims guidelines of the flood program. The Federal Insurance Administrator is the sole authority.

30. NO IMPUTED FAULT

Given the various federal principles outlined within this Answer, Defendant asserts that Plaintiffs have no viable claim for relief against this Defendant. In addition, Plaintiffs has no viable claim for relief against the agent. However, in the alternative, Defendant asserts that any claim of imputed fault where Plaintiff alleges that Defendant should be cast in judgment under any theory of imputed fault arising under state law for the acts or omissions of the agent, is precluded by federal law. Federal law establishes a line of demarcation separating the WYO carrier from the agent for these purposes. As a matter of federal law, the WYO carrier is the fiscal agent and fiduciary of the United States, while the agent acts for the Insured. See 42 U.S.C. §4071(a)(1), 44 C.F.R. §61.5(e), and 44 C.F.R. §62.23(f).

31. CONSTITUTIONAL ISSUES

Pursuant to the Appropriations Clause, no recovery may be allowed to the Plaintiffs beyond recoveries that are authorized and sanctioned by the Congress via the express statutes and regulations of this Program. Pursuant to the Supremacy Clause, all federal rules and regulations preempt and displace any rule or regulation of the states bearing upon the same subject matter. As the States have no power to regulate the National Flood Insurance Program via the congressional tender found in the McCarren-Ferguson Act, Defendant asserts under the Commerce Clause that the States have no regulatory authority over the NFIP operations of FEMA's WYO Program carriers at all. Pursuant to the separation of powers doctrine, Defendant respectfully submits that the role of the courts in a dispute of this type is limited by the principles set forth by the Supreme Court in the section on "policy" in *Chevron v. Natural Resources Defense Council*, 104 S.Ct. 2778 (1984).

32. PAYMENT FOR THE HANDLING OF CLAIMS

The Defendant WYO carrier has no reason to act in bad faith or in a deceptive or unfair manner, as it receives a 3.3% commission for ever dollar paid to an Insured under an Standard Flood Insurance Policy. See 44 C.F.R. Part 62, App. A, Art. III (C)(1). In other words, the greater the amount paid to an Insured under an Standard Flood Insurance Policy, the higher the fee the WYO carrier will receive from the federal government for handling the claim.

33. EXTRA-CONTRACTUAL CLAIMS

Defendant avers that any and all extra-contractual claims are preempted and/or barred by federal constitutional, statutory and regulatory law, as to a WYO carrier.

34. FEDERAL COMMON LAW CLAIMS

Defendant avers that the Standard Flood Insurance Policy does not confer upon the policyholders the right to assert extra-contractual claims under the guise of "federal common law." Any references to federal common law in the Standard Flood Insurance Policy directs courts to employ standard insurance principles when deciding *coverage* issues under the policy.

35. LOSS PAYEES

In the event of any recovery by the Plaintiff, Defendant affirmatively asserts the mortgage clause of the Standard Flood Insurance Policy, and affirmatively asserts that the name of any lending institution or other loss payee must be included in any judgment or payment in this case.

36. APPRAISAL CLAUSE

If the Plaintiff's Standard Flood Insurance Policy claims dispute reaches a point where it is established that there is (1) full and complete compliance with all conditions precedent to the making of a claim, and (2) resolution and agreement upon all issues of both coverage and the scope of the loss, then and only then Defendant affirmatively asserts and invokes the appraisal clause of the Standard Flood Insurance Policy. 44 C.F.R. Pt. 61, App. A(1), Art. VII(P).

37. NO JURY

Defendant contends that trial by jury is not available against WYO Program carriers.

38. THE STANDARD FLOOD INSURANCE POLICY IS NOT A VALUED POLICY

A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy as per Article II(B)(28).

39. LAW GOVERNING ISSUANCE OF POLICY

The issuance of an Standard Flood Insurance Policy by the WYO Program carrier is strictly governed by 44 C.F.R. §§61.5(e), 61.11, 61.13; 44 C.F.R. Pt. 61, App. A(1); 44 C.F.R. Pt. 62, App. A; and, 42 U.S.C. §4001 *et seq*.

40. RESERVATION OF RIGHTS

To the extent permitted by law, Defendant reserves its rights to supplement and amend this Answer and to assert additional affirmative defenses as future discovery may warrant and require.

WHEREFORE, Defendant, Fidelity National Property and Casualty Insurance Company, prays that this answer and affirmative defenses be deemed good and sufficient, and that after due proceedings are had, that there be a judgment in favor of this Defendant and against the Plaintiffs, dismissing all claims with prejudice, and that cost be taxed to the Plaintiffs.

June __, 2008.

DEFENDANT,
By its Attorney,

/s/ Holly R. Rao, Esq. #3539
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on to:

Thomas J. Marks, Esq.
Decof & Decof, P.C.
One Smith Hill
Providence, RI 02903

/s/